IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**DIRK ABBAS,**                                     Case No. 6:11-CV-06200-SU

            Plaintiff,

            v.                                             **FINDINGS AND**
                                                      **RECOMMENDATIONS**
**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

            Defendant.

SULLIVAN, Magistrate Judge:

Dirk Abbas ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Commissioner's decision should be reversed and this case should be remanded for further proceedings.

Page 1 - FINDINGS AND RECOMMENDATION

**PROCEDURAL BACKGROUND**

On January 29, 2008, plaintiff protectively filed an application for SSI.[1] Tr. 11, 91-96. After the application was denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 11, 66-67. On July 20, 2010, an ALJ hearing was held before the Honorable Edward Hein, at which plaintiff testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 11, 22-41. On July 30, 2010, ALJ Hein issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 11-17. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Thereafter, plaintiff filed an appeal in this Court.

**FACTUAL BACKGROUND**

Born on April 25, 1963, plaintiff was 45 years old on the alleged onset date of disability and 47 years old at the time of the hearing. Tr. 91. Plaintiff dropped out of high school in the eleventh grade and has not obtained a GED. Tr. 28, 117. Plaintiff has past relevant work experience as a sanitation worker and truck driver. Tr. 39, 131-34. He alleges disability beginning September 29, 2008 due to congestive heart failure, kidney failure, cardiomyopathy, and atrial fibrillation. Tr. 25, 112.

In January 2008, plaintiff went to the Lebanon Community Hospital emergency room, complaining of water retention and shortness of breath. Tr. 32, 181-82. He was diagnosed with cardiomyopathy with congestive heart failure and atrial fibrillation. Tr. 178. He was admitted to

---

[1] Plaintiff also filed an application for Disability Insurance Benefits ("DIB"). Tr. 97-99. In both applications, plaintiff initially alleged disability as of September 1, 2005. *Id.*; tr. 91. On July 20, 2010, plaintiff amended his alleged onset date to September 29, 2008. Tr. 11, 25. Because he only met the insured status requirements of the Act through December 31, 2006, plaintiff voluntarily withdrew his DIB claim. *Id.*

Page 2 - FINDINGS AND RECOMMENDATION

the hospital for four days and underwent testing, including an echocardiogram and EKG. Tr. 178-217. His echocardiogram revealed an ejection fraction of 15%.[2] Tr. 199. Plaintiff was discharged with medication to treat his various heart-related problems. Tr. 178-80. In July 2008, plaintiff was presumptively approved for Medicaid because of his chronic heart condition. Tr. 378.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less

---

[2] The ejection fraction is a measurement of how well the heart is pumping. People with a healthy heart usually have an ejection fraction of 50% or greater. Most people with heart failure have an ejection fraction of 40% or less.

Page 3 - FINDINGS AND RECOMMENDATION

than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff

had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 13. At step two, the ALJ determined that plaintiff had the following severe impairments: morbid obesity, congestive heart failure, and atrial fibrillation. *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 14.

Because he did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work except that he "cannot climb ladders, ropes, or scaffolds, can occasionally climb stairs, stoop, kneel, crouch, and crawl, and can frequently balance." *Id.*

At step four, the ALJ found that plaintiff could return to his past relevant work as truck driver, "as [it was actually] performed [by] plaintiff." Tr. 17. The ALJ therefore did not go on to evaluate step five; rather, based on his step four finding, the ALJ determined that plaintiff was not disabled within the meaning of the Act and, accordingly, was not entitled to benefits. *Id.*

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) not considering his neck and back pain as a severe impairment at step two; (2) inappropriately rejecting his subjective symptom testimony; (3) improperly evaluating the opinion of Randall Bream, M.D.; and (4) relying on invalid testimony from the VE.

I.  Step Two Findings

Plaintiff asserts, for the first time in his reply brief, that the ALJ failed to include his neck and back pain as a severe impairments at step two. *Compare* Pl.'s Opening Br. 5-11, *with* Pl.'s

Reply Br. 8-9. It should be noted that, when reviewing a final decision of the Commissioner, the court "need not consider arguments first raised in a reply brief." *Dulaney v. Astrue*, 2011 WL 7331025, *3 n.1 (D.Or. Dec. 2, 2011), *adopted by* 2012 WL 512203 (D.Or. Feb. 14, 2012) (citing *In re Rains*, 428 F.3d 893, 902 (9th Cir. 2000); and *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("issues cannot be raised for the first time in a reply brief")).

Nonetheless, at step two, the ALJ determines whether the claimant has a medically determinable severe impairment or combination of impairments. 20 C.F.R. § 416.920. An impairment is "not severe" if it does not significantly limit the plaintiff's ability to do basic work activities. 20 C.F.R. § 416.921; *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Here, the medical record contains references to a possible neck or back impairment; however, this condition neither meets the durational requirements for a medically determinable impairment, nor does it significantly limit plaintiff's ability to do basic work activities. On December 14, 2004, plaintiff complained of back and neck pain to his primary care physician, John Ward, M.D. Tr. 272. As a result, Dr. Ward prescribed Vicodin to treat plaintiff's pain. Tr. 273. Plaintiff did not report any further pain symptoms until May 3, 2005, nearly five months later. Tr. 269. Further, at a follow-up appointment with Dr. Ward on May 23, 2005, plaintiff did not report

any back or neck pain.[3]  Tr. 267.  However, on June 7, 2005, plaintiff again stated that he was experiencing back and neck pain; during that same visit, plaintiff also reported being "more active [and] doing more activities."  Tr. 260.  Plaintiff did not chronicle any pain symptoms again for over four years, when he noted "some back discomfort."  Tr. 306.  Plaintiff has not reported back or neck pain since that time.[4]  He also did not provide any testimony regarding this allegedly severe impairment.

Thus, plaintiff's reports of back and neck pain were intermittent and infrequent, occurring only four times in a nearly five year period.  In addition, plaintiff did not seek any treatment for this impairment, beyond taking Vicodin, or present any opinion evidence regarding this condition.  As a result, plaintiff failed to establish that this alleged impairment lasted or was likely last continuously for 12 months.  As such, plaintiff's back and neck condition does not meet the durational requirements for a medically determinable impairment.  *See* 20 C.F.R. § 416.909; *see also Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  Therefore, the ALJ properly did not address plaintiff's neck and back pain in the sequential evaluation process.

Nevertheless, even if plaintiff were able to establish that this condition lasted for at least 12 consecutive months, remand on this issue is nonetheless inappropriate.  Plaintiff does not detail what restrictions flow from this alleged impairment.  *See* Pl.'s Reply Br. 8-9.  There was no evidence before the ALJ, and none in the record, providing that plaintiff's neck and back pain created

---

[3] Sometime after May 23, 2005, but before June 7, 2005, plaintiff received a diagnosis of a herniated cervical disk.  *Compare* tr. 267-68, *with* tr. 260-61.  The record does not contain any diagnostic images of plaintiff's back or neck and is silent as to who proffered this diagnosis.

[4] While plaintiff did not report any pain symptoms beyond these instances, some of the medical evidence reflects that back and neck pain are part of his past medical history.  *See, e.g.*, tr. 178, 229.

Page 7 - FINDINGS AND RECOMMENDATION

functional limitations or exacerbated his other alleged impairments.

The burden of establishing that an error is harmful falls on the party attacking an administrative agency's determination: "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)). Yet plaintiff wholly neglected to address how the ALJ's error in assessing his alleged neck and back impairment was harmful and it is not apparent to this Court. In fact, plaintiff was working during 2005, when his complaints of back and neck pain were the most prevalent. Tr. 106. Moreover, he expressly stated in his Adult Disability Report Form that, "[p]rior to 2006, . . . I was able to work . . . without any limitations or restriction." Tr. 112. Without more, plaintiff cannot establish that this condition significantly limits his ability to do basic work activities such that it should have been found severe at step two or been considered when determining his RFC.

In sum, the ALJ's step two finding was based on the proper legal standards and on substantial evidence. Even if the ALJ erred in failing to address plaintiff's alleged neck and back condition, such an error was harmless because it was "nonprejudicial to the claimant [and] irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Therefore, the ALJ's decision should be upheld in this regard.

II.     Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide a clear and convincing reason for rejecting his subjective symptom testimony regarding the extent of his impairments.[5] Pl.'s Opening Br. 6-8.

---

[5] Plaintiff also contends that the ALJ's credibility finding was erroneous because Nurse Practitioner Suzy Webber reported that his "heart condition worsened to a New York Association Class III condition," such that objective medical evidence supported plaintiff's

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted).

A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

---

"subjective claims of fatigue, shortness of breath, and [the] need to lie down and nap throughout the day." Pl.'s Opening Br. 6-7. As an initial matter, only "acceptable medical sources" can diagnose and establish the existence of a medical impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005); 20 C.F.R. § 416.913(a); *see also* SSR 06-03p, *available at* 2006 WL 2329939, *1-2. Because Ms. Webber is a nurse practitioner and, contrary to plaintiff's assertion, there is no evidence in the record that she was working under the supervision of a licensed physician, she is not an "acceptable medical source." Thus, Ms. Webber's diagnosis does not constitute objective medical evidence.

Further, plaintiff misconstrues the legal standard for determining a claimant's credibility. In deciding whether to accept subjective symptom testimony, such as pain or fatigue, an ALJ must perform two stages of analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *see also* 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen*, 80 F.3d at 1282. At the second stage, the ALJ determines whether the claimant's testimony regarding the severity of the symptoms associated with this underlying impairment are credible. *Id.* at 1284.

Here, there is no dispute that plaintiff presented objective medical evidence of an underlying condition that could reasonably be expected to produce some degree of fatigue; accordingly, whether or not additional evidence of this underlying impairment became available in 2010 is irrelevant because the ALJ previously determined that the first element had been met. Tr. 15. This is especially true given that plaintiff received a diagnosis similar to Ms. Webber's from other medical sources, which the ALJ acknowledged in his opinion. Tr. 16, 322, 327. The ALJ was therefore correct to assess whether plaintiff's subjective claims of fatigue were credible, in light of the entire record, in order to determine what he could do despite his impairments.

Page 9 - FINDINGS AND RECOMMENDATION

testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In this case, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not fully credible. Tr. 15. Notably, the ALJ found that plaintiff's activities of daily living belied his subjective testimony. Tr. 15-16. Inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms, can serve as a basis for discrediting it. *Burch*, 400 F.3d at 680; *Smolen*, 80 F.3d at 1284 n.7.

At the hearing, plaintiff testified that he is approximately 6'1" tall and weighed 354 pounds. Tr. 31. He also testified that he lives with and takes care of his mother full-time, who suffers emphysema and is on oxygen. Tr. 29. Accordingly, plaintiff reported driving his mother to appointments or out to lunch with her friends, making her "breakfast and lunch [but] not anything real," getting the mail and the newspaper, feeding her dog, "minor" grocery shopping, vacuuming, and doing the dishes. Tr. 30-34. In addition, plaintiff stated that he can lift his mother's 30 pound dog into the car for vet appointments. Tr. 36. He clarified, however, that he gets out of breath getting the mail, has difficulty climbing stairs, and has to do chores slowly with frequent 15 to 30 minute breaks due to fatigue. Tr. 33-34. Further, plaintiff reported taking two to three naps per day, regardless of his activity level or the amount of sleep he got the night before. Tr. 35.

The ALJ found that the record contradicted plaintiff's contentions at the hearing about how debilitating his fatigue was. For example, the ALJ noted that plaintiff has "no problem with personal care," goes outside "3 or more times a day," is able to drive a car and leave the house

Page 10 - FINDINGS AND RECOMMENDATION

independently, and goes shopping for "groceries and other household needs." Tr. 140-42. As for hobbies, plaintiff stated that he watches television daily, fishes and bird watches once or twice a week, and goes on a walk when he is "feeling up to it." Tr. 139, 143. The ALJ further noted that plaintiff stated that he can be active for "4 to 5 hours" before needing to rest. Tr. 148. He also reported he does not need help with household chores; as such, plaintiff cleaned and cooked daily, and did laundry and shopping weekly. Tr. 141, 148.

The ALJ determined that these non-work activities reveal an ability to perform a limited range of light work. Tr. 14. Thus, because plaintiff's level of activity is inconsistent with the degree of impairment that he alleges, the ALJ found plaintiff's testimony about the severity of his limitations not credible. Tr. 15-16. Accordingly, the ALJ provided a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. *See, e.g.*, *Hughes v. Astrue*, 2012 WL 1566227, *4 (D.Or. May 2, 2012) (the ALJ properly discredited subjective symptom testimony where, even though the activities of daily living were not equivalent to full-time work, "the claimant's activities contradict [his] claims of a totally debilitating impairment").

In addition, the ALJ found that plaintiff was not fully credible because he stopped working for reasons other than his alleged disability. Tr. 15. Plaintiff testified at the hearing that he stopped working in 2000 because "the company that I worked for went out of business and my driver's license got expired [and] I couldn't afford to [to retake the licensing tests]." Tr. 29. Plaintiff also explained that he ceased working in order to care for his parents, both of which were suffering from health issues. *Id.* While plaintiff's devotion to his parents' care is admirable, these statements undermine plaintiff's main argument that fatigue resulting from his heart conditions, which were

Page 11 - FINDINGS AND RECOMMENDATION

diagnosed in 2008, is the reason why he cannot work. To be sure, when a claimant's work history undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (noting a sufficient reason to disregard subjective pain testimony included stopping work due reasons other than the alleged disability).

Finally, the ALJ found that plaintiff was not fully credible because of inconsistencies in his statements to medical providers about the extent of his symptoms. Shortly after his emergency room visit in January 2008, plaintiff reported losing 40 pounds and stated that his energy level was "as it used to be." Tr. 218. At that time, he also denied any shortness of breath. *Id.* In February 2008, although he reported being "a little more tired over the last few days," plaintiff denied fatigue and shortness of breath. Tr. 229. In April 2008, plaintiff reported having "much more energy" and feeling "much better than he has felt in months." Tr. 327. He denied any shortness of breath and indicated that "he had been keeping himself busy" by fishing and working around the house; his weight at that time was 308 pounds. *Id.* In July 2008, plaintiff's condition had stabilized and he was "doing well." Tr. 306. In May 2009, plaintiff reported walking two miles per day. Tr. 322. He explained that, although he still got fatigued, his "symptomalogy had improved [due to his] increased his exercise tolerance." *Id.* In August 2009, plaintiff remarked that he walks every day and is able to walk "quite a way without difficulty." Tr. 317. Plaintiff noted, however, that he was still experiencing "slight dyspnea on exertion which is not significant." *Id.* Overall, plaintiff indicated that his fatigue was lessening. *Id.*

Plaintiff's most recent records from 2010 indicate that he reported improvement with his symptoms when taking his medication properly, but continued to suffer from significant shortness of breath on exertion and fatigue. Tr. 315-16, 385-88. During these visits, plaintiff was repeatedly

Page 12 - FINDINGS AND RECOMMENDATION

instructed to increase his activity level, and was educated regarding the need to eat properly, exercise, and take his medication as prescribed. *Id.*

The ALJ specifically noted this evidence and found that it undermined plaintiff's credibility. Tr. 15-16. As discussed above, inconsistencies in a claimant's testimony, including those between the medical evidence and the alleged symptoms, can serve as a basis for discrediting it. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9 th Cir. 1999) (ALJ properly discredited claimant's subjective testimony where medical records showed that claimant's mental symptoms improved with the use of medication). Moreover, an alleged impairment is not disabling if it can be adequately controlled with treatment. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, as the ALJ correctly determined, plaintiff statements at the hearing regarding his symptoms are contradicted by the medical record. This evidence also reveals that plaintiff's symptoms were relatively well-controlled with treatment. There are also no medical source statements which contradict this evidence that, when plaintiff was exercising, taking his medications as prescribed, and losing weight, his fatigue subsided.

The foregoing discussion reveals that the ALJ identified substantial and specific evidence in the record that undermines plaintiff's claims that his impairments were so great that he was totally disabled and unable to work. Although the evidence of daily activities may also admit of an interpretation more favorable to plaintiff, the ALJ's interpretation is nonetheless reasonable. Accordingly, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective testimony regarding the extent of his limitations. Therefore, the ALJ's finding regarding plaintiff's credibility should be upheld.

III.    Medical Opinion Evidence

Page 13 - FINDINGS AND RECOMMENDATION

Plaintiff contends that the ALJ failed to address the opinion of Dr. Bream and therefore improperly rejected it. Pl.'s Opening Br. 8. In the alternative, plaintiff argues that the ALJ failed to fully develop the record by not "at least recontact[ing] this physician." *Id.*

A.      Weight Afforded to Dr. Bream's Opinion

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). However, if a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.* In either instance, the ALJ is not required to accept an opinion that is brief, conclusory, or not supported by clinical findings. *Id.* (citation omitted).

Plaintiff saw Dr. Bream, at the Samaritan Heart and Vascular Institute ("Samartin"), once in February 2008 for a cardiological consultation. Tr. 218. Between April 2008 and July 2008, plaintiff consulted Nurse Practioner Kim Montagne at Samaritan twice. Tr. 324-28, 371. Thereafter, plaintiff ceased treatment at Samaritan.[6] Tr. 371. Plaintiff's attorney contacted Dr. Bream, apparently seeking his medical opinion regarding plaintiff's alleged impairments; in response, Dr. Bream sent a letter on October 22, 2008, in which he stated that

> We have not seen [plaintiff] since July, at which time he was seen by our nurse practitioner, not be me. I can attest to his disability up to that point, but he has apparently changed physicians since that time. If you need a current evaluation, we would need to see [plaintiff] back in the office . . . I will await further

---

[6] Plaintiff reinitiated care at Samaritan in April 2009, but not with Dr. Bream. Instead, plaintiff's care was managed by Ms. Montagne and Ms. Webber. Tr. 302-03, 315-23.

Page 14 - FINDINGS AND RECOMMENDATION

communication from you as to how you wish me to proceed.

Tr. 371. Neither plaintiff, nor his attorney, sought a follow-up assessment with Dr. Bream or Samaritan after receiving this letter.

The Commissioner concedes that the ALJ did not address Dr. Bream's opinion and, further, "has no objection" to crediting it as true because "Dr. Bream's opinion does not contradict the [RFC] assessed by the ALJ." Def.'s Resp. Br. 6. The Court agrees. Dr. Bream's opinion does not describe any functional limitations. Tr. 371. In addition, Dr. Bream makes clear that he is not opining as to plaintiff's ultimate disability determination within the meaning of the Act. Rather, he is clarifying that he is only capable of attesting to plaintiff's impairments that existed during their treating relationship, which was terminated shortly after the alleged onset date of disability. Thus, Dr. Bream's opinion is not probative as to any issue regarding disability and, as a result, does not conflict with the ALJ's RFC. In other words, even if fully credited, Dr. Bream's opinion would not establish plaintiff's entitlement to Social Security benefits or otherwise affect the sequential steps of the disability analysis. Accordingly, to the extent that the ALJ erred in failing to address Dr. Beam's opinion, such an error was harmless. *Stout*, 454 F.3d at 1055.

### B. Failure to Fully Develop the Record

"The claimant bears the burden of establishing a prima facie case of disability." *Roberts*, 66 F.3d at 182. Yet, in certain limited circumstances, the ALJ has an independent duty to develop the record. *Higbee v. Sullivan*, 975 F.2d 558, 561-62 (9th Cir. 1992). However, the ALJ's "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (citation omitted).

Here, neither the ALJ nor any medical source found the record to be ambiguous or insufficient for proper evaluation. Further, aside from Dr. Bream, plaintiff merely failed to introduce any opinion evidence regarding his impairments. It was plaintiff's duty, rather than the ALJ's, to re-contact Dr. Bream if he was dissatisfied with his medical opinion. *Howard*, 782 F.2d at 1486. Indeed, Dr. Bream offered to re-assess plaintiff's disability upon further examination, but plaintiff declined. Tr. 371. Plaintiff's failure to carry his burden of proof, however, does not equate to an inadequacy or ambiguity in the record. *See McLeod*, 640 F.3d at 885 (rejection of a doctor's opinion does not by itself trigger a duty to contact that doctor for more information). Because the existing evidence is neither ambiguous nor insufficient, the ALJ's duty to more fully develop the record was not triggered. Therefore, the ALJ's decision should be affirmed as to this issue.

IV.   <u>VE Testimony</u>

Plaintiff argues that the ALJ's RFC failed to adequately account for all of his limitations, such that the VE's testimony was invalid.[7] In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p, *available at* 1996 WL 374184, *1-2. The ALJ is required to consider all medical opinions and assess the weight to be afforded each opinion. 20 C.F.R § 416.927. However, the RFC need only incorporate limitations found on the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). As such, the ALJ can only "propose a hypothetical [to the VE] that is based on medical assumptions supported by substantial evidence in the record." *Id.* at 1163-64 (citing *Roberts*, 66 F.3d at 184).

At step two, the ALJ determined that plaintiff's obesity was a severe impairment. Tr. 13.

---

[7] While plaintiff directly challenges the VE's testimony, he does not expressly dispute his RFC. Nevertheless, in order to provide a complete review of this appeal, the Court interprets plaintiff's argument as challenging both the RFC and the VE's testimony.

Page 16 - FINDINGS AND RECOMMENDATION

As the ALJ noted, plaintiff's body mass index at the time of the hearing was 46.6, "which is considered Level III, or 'extreme' obesity, under [the] medical criteria established by the National Institutes of Health." Plaintiff's congestive heart failure, which the ALJ also determined to be severe, causes fatigue. *See, e.g.*, Heart Failure Society of America, *Symptoms of Heart Failure or Congestive Heart Failure*, http://abouthf.org/questions_symptoms.htm (last visited Aug. 22, 2012). Moreover, while the ALJ did not find it to be severe at step two, there is substantial objective medical evidence in the record that plaintiff suffered from sleep apnea. Tr. 292-95, 385. Accordingly, in formulating the RFC, the ALJ was required to expressly consider how these impairments, singly or in combination, affected plaintiff's ability to work. *See* SSR 02-1p, *available at* 2002 WL 34686281, *6 ("[o]besity can cause limitation of function . . . such as sitting, standing, walking . . . [therefore, an] assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment[, inlcuding] the ability to sustain a function over time"); *see also* SSR 96-8p, *available at* 1996 WL 374184, *1-2.

    Here, however, the ALJ wholly failed to account for these limitations or otherwise address how plaintiff's "extreme" obesity, especially in combination with his sleep apnea and underlying heart conditions, would not result in any physical limitations due to fatigue. Notably, plaintiff's RFC for a limited range of light work does not include any standing or walking restrictions. Light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, *available at* 1983 WL 31251, *6; *see also* 20 C.F.R. § 416.967(b). This level of activity is inconsistent with the evidence in the record. *See* tr. 275 (consulting source Richard Alley, M.D., who the ALJ fully credited and who provided the only physical RFC

Page 17 - FINDINGS AND RECOMMENDATION

assessment in the record, opined that plaintiff could stand or walk for approximately two hours in an eight-hour workday)[8]; tr. 30-34 (plaintiff's testimony regarding his fatigue).

The ALJ's total failure to include restrictions for the collective effect of these impairments constitutes harmful legal error. Specifically, limitations for obesity and fatigue were not incorporated in the RFC, which rendered the VE's testimony invalid. *Osenbrock*, 240 F.3d at 1163-64. This is especially problematic in this case, wherein the ALJ determined that plaintiff could return to his past relevant work as a truck driver without considering the fact that plaintiff's size would likely create a barrier to working on a sustained basis within the small confines of a truck or that plaintiff's fatigue could impact his ability to drive safely for prolonged periods.

Therefore, because there are outstanding issues that must be resolved, this case should be remanded for further proceedings so that the ALJ can expressly address how these impairments affect plaintiff's ability to work. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). In addition, upon remand, the ALJ should obtain testimony from a medical expert regarding limitations associated with extreme obesity and how this impairment interacts with plaintiff's underlying heart condition and sleep apnea. If necessary, the ALJ must then revise his RFC determination. Finally, the ALJ must incorporate any revised findings into his step four and five determinations.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be REVERSED and this case should be REMANDED for further proceedings consistent with this Findings and Recommendation.

---

[8] In making this finding, the Court is mindful of the fact that the opinion of a non-examining physician ordinarily does not "by itself constitute substantial evidence." *Lester*, 81 F.3d at 831.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 10, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 22nd day of August, 2012.

　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Patricia Sullivan　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　Patricia Sullivan
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge